[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-12195

Non-Argument Calendar

_____

GULFPOINT CONSTRUCTION COMPANY, INC.,

Plaintiff-Appellant,

*versus*

WESTFIELD INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:22-cv-00086-SPC-NPM

_____

Before WILSON, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

In this case, the district court granted summary judgment to Westfield Insurance Company on Gulfpoint Construction Company's breach of contract claim. The district court held that Westfield was entitled to summary judgment for two reasons. First, Gulfpoint failed to give timely notice to Westfield, its insurance company, of property damage from Hurricane Irma, and failed to rebut the presumption of prejudice that arises from that failure. Second, even if Gulfpoint's late notice did not preclude insurance coverage, the insurance contract did not allow Gulfpoint to recover replacement cost value ("RCV") damages on property it had not yet repaired or replaced.

After review, we vacate the grant of summary judgment and remand. To start, we agree with Gulfpoint that the evidence creates a genuine issue of material fact on rebutting the presumption of prejudice. But even so, the damages issue is potentially dispositive in Westfield's favor. Gulfpoint does not contest the district court's ruling that it cannot recover RCV damages under the circumstances, it merely argues that the district court's conclusion does not end the case because it *also* seeks the actual cash value ("ACV") of the property. The district court never ruled on that argument, so, rather than decide the issue in this posture, we vacate the grant of summary judgment and remand for the district court to consider the matter in the first instance.

## I.    **Background**

### A.  *Factual Background*

This case involves claims for roof and interior damage made after Hurricane Irma made landfall in Florida on September 10, 2017.  Westfield insured property owned by Gulfpoint.  The policy at issue in this case included two relevant provisions.  First, the notice provision says:

> E. Loss Conditions
>
> . . .
>
> 3. Duties In The Event Of Loss Or Damage
>
>> a. You must see that the following are done in the event of loss or damage to Covered Property:
>>
>> . . .
>>
>>> (2) Give us prompt notice of the loss or damage. Include a description of the property involved.

Second, the Replacement Cost provision says:

> G. Optional Coverages
>
> . . .
>
> 3. Replacement Cost
>
>> a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the

Valuation Loss Condition, of this Coverage Form.

. . .

d. We will not pay on a replacement cost basis for any loss or damage:

> (1) Until the lost or damaged property is actually repaired or replaced; and

> (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

Shortly after the Hurricane, Gulfpoint hired Crowther Roofing and Construction Services to inspect the damage and perform emergency repairs. Crowther fixed the damage that it found. Gulfpoint did not notify Westfield of the damage or repairs at that time.

Two years later, however, Gulfpoint decided that the roof and interior damage was worse than it originally thought and submitted a claim to Westfield on September 6, 2019. Westfield retained an engineer, Blake Shatto, to inspect the building and evaluate any roof or water damage. Relying on Shatto's report, Westfield determined that there was not covered wind damage to the roof or an opening in the roof or walls that allowed water to enter.

Westfield denied coverage. Its initial denial letter stated that "[t]he claim was reported . . . on 9/6/2019, with a reported date of

loss presented as 9/10/2017," meaning "the claim was presented to Westfield Insurance Company 2 years after the claimed date of loss." The first letter also explained that the damages "did not appear to have been caused by a wind event," and ended with a reservation of rights:

> Please be aware that neither this letter nor any actions taken by Westfield Insurance Company or any of its representatives are intended to waive any of the terms or conditions of our policy of insurance with you and should not be construed as a waiver of any rights or defenses under said policy. Also, please be advised that this letter is not intended to set forth all issues of coverage which may arise from this loss under your policy of insurance with Westfield Insurance Company.

After receiving the letter, Gulfpoint retained an expert, James Hartney, to inspect the property as well. Hartney wrote a report disputing Shatto's conclusions, opining that the damage was "exceedingly likely to be due to high winds caused by Hurricane Irma." Gulfpoint submitted the report to Westfield and asked it to reconsider.

Westfield refused to reconsider its coverage denial. It sent a second coverage denial letter in early January 2020, in which it stated that "no information presented in Mr. Hartney's report alters the conclusions in [Westfield's earlier engineering] report." Thus, "Westfield's position remain[ed] as stated in [the first claim denial letter]" and, "[a]s such, no claim payment [would] be made."

Westfield again "expressly reserve[d] all of its rights and defenses under the policy of insurance or otherwise."

### B. Procedural History

Gulfpoint filed this breach of contract lawsuit in Florida state court. Westfield removed the case to federal court based on diversity jurisdiction.

Gulfpoint retained two experts relevant to this appeal. First, Gulfpoint retained a general contractor, Dennis James, to provide an expert opinion about the cost of repairing Gulfpoint's property. In its expert report disclosure, Gulfpoint specifically stated that James would "offer an opinion regarding the value of the necessary repairs in order to restore [Gulfpoint's] tile roof systems to their pre-loss conditions."[1]

Second, Gulfpoint retained Byron Anderson to conduct an engineering evaluation of the damage to the property. Anderson explained that he "was able to formulate [his opinions]" despite reviewing the property two years after the storm "and was in no way prejudiced by the timing of [the] inspection," especially because "no other windstorm event occurred at this location

---

[1] The parties debate whether that disclosure was sufficient to put Westfield on notice of a claim for ACV damages—which is usually measured as "replacement cost minus depreciation," *Trinidad v. Florida Peninsula Insurance Company*, 121 So. 3d 433, 443 (Fla. 2013)—in light of the fact that James mentioned ACV occasionally in the report itself. As discussed below, we leave that question to the district court to decide in the first instance. *See* Section III.B & n.3.

23-12195          Opinion of the Court                    7

between the time of Hurrican Irma and [Mr. Anderson's] inspection which could have resulted in the damage observed to [Gulfpoint's] building and its roof system." Anderson ultimately concluded that the damage to Gulfpoint's roof system and the interior water damage were the result of Hurricane Irma.

Gulfpoint deposed Shatto regarding his investigation. Asked to explain "how having had to inspect that damage almost two years after Irma negatively impacted or limited [his] ability to" determine "the cause of any portion of the damage or rule out other potential competing causes of the same damage," Shatto said this:

> [T]ime is going to do things . . . . It's going to weather surfaces . . . . So, yeah, it does make it harder to date when things have happened, but at the end of the day, wind damage is wind damage. It's a permanent deformation or movement of a material.

But, he said, work invoices he was provided regarding the earlier repairs to the property demonstrated that the condition of the property had not materially changed since those repairs:

> Now, as far as the work invoices go, those were great. . . . because . . . they showed a couple of fractures with that dirty weathering of conditions that have been there for years. *They pretty much showed the exact condition that I saw*, and then they showed a couple of tiles that had been moved and some flashing that looked like wind damage. *So if I were to inspect that roof—if I had inspected that roof hand in*

> *hand with the Crowther Roof people, my report would have been identical . . . . I would have found the same partially formed cracks . . . . [M]y report wouldn't have changed.*

(emphasis added).

Westfield sought summary judgment based on two affirmative defenses. First, Westfield argued that "Gulfpoint [] did not give Westfield the prompt notice of the loss or damage" that was required to recover under the insurance contract. As a result, Westfield argued, "[it] and its experts were deprived of a fresh examination of the unrepaired damage to the roof." Second, Westfield argued that Gulfpoint could not recover the cost of replacing its roof because it had not yet *replaced* the roof, as required by the policy.

Gulfpoint opposed the motion. Among other things, Gulfpoint argued that Westfield was precluded from arguing that Gulfpoint had failed to give prompt notice of the damage. Gulfpoint also argued that it was also seeking the ACV of the property—not merely RCV. Gulfpoint distinguished a case in which the plaintiff had *only* sought RCV damages, explaining that James's expert report "differentiate[d] the RCV with the ACV being claimed in this lawsuit." *See CMR v. Empire Indem. Ins. Co.*, 843 Fed. App'x 189 (11th Cir. 2021).

The district court granted Westfield's motion. First, the district court explained, Gulfpoint's claim was barred by its failure to give prompt notice. The district court rejected Gulfpoint's argument that Westfield should be precluded from asserting a

prompt-notice defense because Westfield had "[taken] issue . . . with Gulfpoint's two-year delay in notifying the insurer" in its initial letter and expressly reserved all its rights and defenses under the Policy in both letters.  Next, under the circumstances, the court concluded that the two-year delay in notifying Westfield of Hurricane damage "constitute[d] untimely notice."    Then, "[h]aving determined that Gulfpoint's notice to Westfield . . . was untimely, the [c]ourt [then] presume[d]," as required by Florida law, that "Westfield was prejudiced by the delay"—and it found that Gulfpoint had not rebutted the presumption.  In particular, the court reasoned that the fact that "both parties can form . . . different opinions about causation [of the damages] cannot rebut the presumption of prejudice," especially because Gulfpoint's argument was "complicated by the 'emergency repair work' [that] it undertook in the days following Hurricane Irma."

Second, the district court separately agreed that Westfield was entitled to summary judgment because Gulfpoint could not recover the RCV of the property because it had not, as the policy required, *replaced* the damaged property.  Without addressing Gulfpoint's argument that it had *also* asserted a claim for ACV damages, the district court concluded that, "[u]nder the Policy . . . Gulfpoint may not recover RCV damages" and so "Westfield [was] also entitled to summary judgment on this ground."

The district court entered judgment and Gulfpoint appealed.

## II.    Standard of Review

"We review *de novo* a district court's grant of summary judgment, applying the same standard as the district court." *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1242 (11th Cir. 2002). Namely, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-movant's favor. *See Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999) (quotation omitted).

## III.    Discussion

On appeal, Gulfpoint argues that the district court erred in granting summary judgment on both the prompt notice and damages issues. We agree (in part) on prompt notice. As to damages, however, we conclude that the district court failed to address a potentially dispositive argument—so we vacate the grant of summary judgment and remand for the district court to consider that argument in the first instance.

### A.  *Prompt Notice*

Gulfpoint argues that the district court erred in granting summary judgment on prompt notice both because (1) Westfield is estopped from raising the defense and (2) Gulfpoint rebutted the

presumption that Westfield was prejudiced by the delay.[2]  We reject the first argument, but we agree that Gulfpoint has created a genuine issue of material fact about whether it rebutted the presumption of prejudice.

> i.  *Westfield is not estopped from raising a prompt notice defense.*

Gulfpoint argues that Westfield "waived" any prompt notice rights under the insurance contract because it "investigated the loss and reached a decision based on the merits of the case," i.e., that "the damage was caused by perils excluded under the policy," failing to mention prompt notice until this litigation.  Thus, Gulfpoint contends, under Florida's "mend the hold" doctrine—a species of estoppel—Westfield cannot shift its defense now that litigation has commenced.  We disagree.

Florida courts recognize a species of estoppel known as the "mend the hold" doctrine.  "[T]he phrase is a nineteenth-century wrestling term, meaning to get a better grip (hold) on your opponent." *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 362 (7th Cir. 1990).  Florida courts have applied the doctrine such that a litigant may not change his position on contested issues after litigation commences to prejudice his opponent's case.  In *O'Bryan v. Linton*, the Florida Supreme Court described the principle this way: "a party who gives a reason for his conduct on anything

---

[2] Gulfpoint does not dispute that the two-year delay in giving notice to Westfield was not sufficiently prompt under the circumstances.

involved in a controversy cannot, after litigation has started, change his ground and put his conduct upon a different consideration[.]" 41 So. 2d 169, 171 (Fla. 1949) (quotation omitted). Later cases demonstrate the same principle. *See, e.g.*, *Hodkin v. Perry*, 88 So. 2d 139, 140 (Fla. 1956) (affirming estoppel against the plaintiff appellant questioning the validity of a bylaw that he had "actively supported and voted for the adoption of" because it was inequitable that the plaintiff "had no objection to the by-law so long as it was to be used only against other doctors . . . and it was not until it was enforced against him that it became illegal."); *Salcedo v. Asociacion Cubana, Inc.*, 368 So. 2d 1337, 1339 (Fla. 3d DCA 1979) ("[H]aving successfully claimed that mediation was a required condition precedent to the filing of this action, the defendant may not now be heard to say that the delay specifically caused by the pendency of that very proceeding has resulted in the running of the statute of limitations.")

We need not discern the precise contours of the doctrine, however, because Gulfpoint's argument fails even on a robust understanding of the doctrine's sweep. Here, Westfield has not taken any new or different position because the coverage denial letters plainly reserved all rights under the insurance contract. Unlike the cases Gulfpoint cites (those discussed above), this reservation of rights put Gulfpoint on notice that all of the potential defenses under the insurance contract were available. What is more, Westfield expressly alluded to the timeliness of the notice when it noted, in the first letter, that "the claim was presented to Westfield . . . 2 years after the claimed date of loss." Thus, the

assertion of the prompt notice defense in this litigation was not a new or different position for purposes of Florida's "mend the hold" doctrine.

Gulfpoint resists this conclusion, arguing that "[i]t is undisputed Westfield did not deny Gulfpoint's claim based on any failure by Gulfpoint to promptly report the loss," but rather because the damage was not caused by Hurricane Irma. But the fact that Westfield passed specifically on the question of whether the claimed damages were covered does not mean that it did not also reserve all its rights and defenses under the insurance contract—especially since Westfield also mentioned the delay in receiving notice in the first claims denial letter. Gulfpoint points to no authority suggesting that Florida's "mend the hold" doctrine estops an insurer from raising contractual defenses where the insurer notes the factual basis for the defense and reserves all rights under the contract.

Thus, we conclude that Gulfpoint has not shown that Westfield was prohibited from raising the prompt notice defense by Florida's "mend the hold" doctrine.

### ii. *Gulfpoint rebutted the presumption of prejudice.*

Having concluded that Westfield was not estopped from raising the prompt notice defense, we turn to Gulfpoint's second argument on the prompt notice defense—that it successfully rebutted the presumption of prejudice. Gulfpoint argues that the district court "failed to appreciate all the evidence that showed

[that] Gulfpoint had rebutted the presumption of prejudice[.]" Gulfpoint points out that, "based on the reports of [Westfield's] expert and Gulfpoint's expert, there would have been no material difference had Gulfpoint reported the claim earlier." So, while Westfield's expert (Mr. Shatto) believed that the damage to Gulfpoint's property was caused by normal wear-and-tear, not Hurricane Irma, his testimony did not suggest (and in fact disputes) that he was unable to investigate the loss because of elapsed time. We agree.

"A notice of damage is" often, and is here, "a pre-condition to a claim." *De La Rosa v. Fla. Peninsula Ins. Co.*, 246 So.3d 438, 441 (Fla. 4th DCA 2018). "If an insured breaches the notice provision" of an insurance policy, "prejudice to the insurer will be presumed, but [that presumption] may be rebutted by a showing that the insurer has not been prejudiced by the lack of notice." *Id.* (quoting *Stark v. State Farm Fla. Ins. Co.*, 95 So.3d 285, 287–88 (Fla. 4th DCA 2012)).

"Whether the presumption of prejudice to the insurer has been overcome is ordinarily" a question of fact, so, to grant summary judgment, the record must "conclusively foreclose the insured's ability to overcome the presumption of prejudice. *Id.* (alterations accepted) (quotation omitted). So, for example, in *Shapiro v. First Protective Insurance Company*, a Florida court found that whether the insureds had overcome the presumption was a fact question because their engineer, "based on his inspection, opined not only that the homeowners' roof more likely than not

had been damaged as a direct result of Hurricane Irma in 2017, but also that this damage still could be observed as late as 2022, five years after Hurricane Irma." 359 So.3d 777, 782 (Fla. 4th DCA 2023); *see also Stark v. State Farm Fla. Ins. Co.*, 95 So.3d 285 (Fla. 4th DCA 2012) (similar). Conversely, in *De La Rosa*, "the record foreclose[d] the insured's ability to overcome the prejudice to the insurer in evaluating the extent of the damage because of the delay in making the claim" because the insurer "would not be able to determine the damage *at the time of the incident.*" 246 So.3d at 441–42 (emphasis added). *De La Rosa* distinguished *Stark* on the ground that "even though there may be disputed issues of fact as to whether the insurer was prejudiced in determining the *cause* of the loss, the facts . . . show[ed] that the insurer would be prejudiced by the passage of time in investigating the *extent* of the loss, and thus, the cost of repair." *Id.* at 442 (emphasis in original).

Here, we cannot say that the record "conclusively foreclose[s]" Gulfpoint's ability to overcome the presumption of prejudice under Florida law. *Stark,* 95 So.3d at 288 (quotation omitted). For one thing, much like in *Shapiro*, Gulfpoint's expert testified that he "was able to formulate [his] opinions" despite reviewing the damage years after the fact, "and was in no way prejudiced by the timing of [the] inspection"—to the contrary, he said, "no other windstorm event occurred at [the property's] location between the time of Hurricane Irma and [his inspection] which could have resulted in the damage observed to the [Gulfpoint's] Building and its roof system." *See Shapiro, 359* So.3d at 782 (concluding that "the homeowners' engineer's affidavit"

stating that the damage was caused by Hurricane Irma and still observable five years later "created issues of material fact as to whether the homeowners could overcome the presumed prejudice").

Indeed, Westfield's own expert, Shatto, made clear that his investigation was not prejudiced by the passage of time. Asked to explain "how having to inspect that damage almost two years after Irma negatively impacted or limited [his] ability to" determine "the cause of any portion of the damage or rule out other potential competing causes of the same damage," Shatto said this:

> if I were to inspect that roof—if I had inspected that roof hand in hand with the Crowther Roof people [who conducted the inspection and repairs days after the hurricane], my report would have been identical . . . . I would have found the same partially formed cracks . . . . my report wouldn't have changed.

Thus, as in *Shapiro,* there is plainly evidence from which a jury could infer that Westfield did not suffer prejudice in its investigation because of Gulfpoint's delay in notifying them.

Westfield's argument to the contrary is principally based on *De La Rosa.* *See* 246 So.3d 438. Westfield contends that the district court correctly recognized that "the analysis of prejudice was complicated by the emergency repairs and the fact that Westfield had no opportunity to observe the damage prior to the repairs." And it suggests that, as in *De La Rosa,* "Gulfpoint provides no testimony . . . to show that had an investigation been conducted

23-12195                Opinion of the Court                17

before the emergency repairs it would not have revealed anything materially different from the delayed investigation[.]"

The problem for Westfield is that, in *De La Rosa*, the insured had renovated the *entire* bathroom after the water backup—so there could be no dispute that the insurer's ability to evaluate the extent of the damage was hampered. *See id.* at 439. The insured contested the presumption of prejudice with evidence showing that "the only possible *event* that could have caused [that] type of damage was a one-time waste line water backup" and that such damages "would have been evident upon an inspection by the insurer." *Id.* at 440 (emphasis added). But there was no dispute that the insurer was prejudiced "in evaluating *the extent of the damage* because of the delay in making the claim." *Id.* at 441 (emphasis added).

Here, by contrast, the experts apparently *agree* that their investigations into the damage were not hampered—in any way—by the passage of time and minor repairs. So, unlike in *De La Rosa*, there is *at least* a fact issue on whether Gulfpoint's delay in making a claim prejudiced Westfield. At a minimum, we cannot say that the record "conclusively foreclose[s]" Gulfpoint's ability to overcome the presumption of prejudice under Florida law. *Stark,* 95 So.3d at 288 (quotation omitted).

⋆

Thus, while Westfield was not estopped from asserting the prompt notice defense, there is a genuine dispute of material fact as to whether that delay prejudiced Westfield.

However, the district court also granted summary judgment on an alternative ground: damages.  We thus turn to Gulfpoint's second argument—that the district court's grant of summary judgment on its bid for RCV damages was not enough to end this case because it also seeks ACV damages.

### B.  Damages

Gulfpoint argues that granting summary judgment based on the contractual unavailability of RCV damages was error because the district court ignored Gulfpoint's bid for ACV damages. Because the district court never ruled on this potentially dispositive argument, we conclude the proper course is to vacate and remand for the district court to consider it in the first instance.

As discussed above, the policy here establishes repair or replacement of damaged property as a prerequisite to recover replacement-cost value.  Gulfpoint does not dispute that it has not made all the repairs on the claimed damage, so we agree that the district court correctly granted summary judgment on Gulfpoint's claim for RCV damages.  *Ceballo v. Citizens Prop. Ins. Corp.*, 967 So. 2d 811, 815 (Fla. 2007) (explaining that, under Florida insurance contracts, replacement cost damages typically do not arise unless and until the repairs or replacement have actually been completed).

On appeal, Gulfpoint does not argue otherwise—it merely argues that this conclusion about RCV damages does not end the case because it also seeks ACV damages.  And, though its argument

below was less clear, it raised the same issue in its summary judgment brief.

The problem is that the district court did not address Gulfpoint's argument about ACV damages below. The district court took Westfield at its word that "Gulfpoint's expert disclosure suggests [that] Gulfpoint is seeking RCV damages," and, interpreting the contract, agreed that "Gulfpoint has not performed the roof replacement it claims it requires." Thus, without addressing the argument that Gulfpoint also sought ACV damages, the district court concluded that "Westfield is also entitled to summary judgment on this ground."

Because the district court appeared to rule that the RCV damages question was an independently sufficient basis for summary judgment, the question of whether Gulfpoint could or did *also* seek ACV damages is potentially dispositive. Rather than decide that question in the place of the district court, we conclude the better course is to vacate the grant of summary judgment and remand for the district court to consider the matter in the first instance.[3]

---

[3] Though we do not purport to prejudge the issue, and certainly not to suggest any particular outcome when the district court exercises its discretion in this matter, we pause to highlight two pertinent issues.

First, while a plaintiff typically is not required to plead damages with particularity, *see* Fed. R. Civ. P. 8(a)(3) (requiring only "a demand for the relief sought, which may include relief in the alternative or different types of relief"), one question might be whether the complaint adequately apprised Westfield or the court of Gulfpoint's bid for ACV damages. *See* D.C. Docket No. 2:22-

## IV.    Conclusion

For these reasons, we vacate the grant of summary judgment and remand for the district court to consider whether Gulfpoint sought ACV damages, and thus whether the grant of summary judgment on RCV damages disposes of this case.

**VACATED AND REMANDED.**

---

cv-00086, Doc. 22 ¶ 21 (asserting that Westfield breached the contract by "[f]ailing to pay all benefits due"); *see id.* at 4 (praying for "judgment against the Defendant . . . for damages, interest, attorneys' fees and costs . . . and for such other and further relief as the Court deems just and proper"). After all, "[a] plaintiff may not amend [its] complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

Second, "[i]n order to make a proper [expert] disclosure, parties must, by the deadline, disclose the identity of their experts 'accompanied by a written report,'" which, in turn, "must contain a complete statement of *all* opinions the witness will express and the basis and reasons for them," not merely "the facts or data considered by the witness in forming them." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019) (quoting Fed. R. Civ. P. 26(a)(2)(B), 26(a)(2)(B)(i)–(ii)). And, under Rule 37, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or [is] harmless." Fed. R. Civ. P. 37(c)(1). As discussed, the parties debate whether Gulfpoint's expert disclosure adequately identified an opinion on ACV damages, as well as RCV damages. Thus, the district court might also consider whether Gulfpoint failed to disclose an expert opinion on ACV or supplement its disclosure with such an opinion—and, if so, whether that does or should preclude the use of such evidence. *See, e.g., Romero v. Drummond Co.*, 552 F.3d 1303, 1323 (11th Cir. 2008).